# Powell, et al. v. Louisville & Nashville Railroad Company.

(Decided November 21, 1916.)

## Appeal from Lincoln Circuit Court.

1. Railroads—Fires — Negligence — Instructions. — Plaintiffs, having confined their evidence to negligence of the defendant railroad company in the equipment and operation of particular engines from which a fire is alleged to have been started on their property, and having offered an instruction which was given limiting their right of recovery to negligence in respect to, the same engines, cannot object to another instruction which correctly states another phase of the law, upon the ground that it refers only to the same engines referred to in the evidence and instruction offered by them, and does not include other engines shown to have passed the property near the time and before the fire, with respect to which no negligence in equipment or operation is shown.

2. Railroads—Fires—Sufficiency of Evidence.—Circumstantial evidence as to the origin of the fire doing no more than suggesting a possible cause is not such that will authorize a reversal of a judgment upon the ground that the verdict upon which it was entered is flagrantly against the evidence.

3. New Trial—Affidavits of Jurors—What Does Not Authorize Reversal.—Affidavits of two jurors filed after judgment that another juror was asleep a part of the time during the trial, contradicted by the affidavit of. the juror, do not authorize a reversal upon the ground that the trial court abused a sound discretion in refusing a new trial.

ROBERT HARDING, J. S. OWSLEY and G. D. FLORENCE for appellants.

P. M. McROBERTS, K. S. ALCORN and B. D. WARFIELD for appellee.

Opinion of the Court by Judge Clarke—Affirming.

Appellants, J. R. Powell and M. M. Sweeney, instituted this action in the Lincoln circuit court against appellee seeking to recover $10,000.00 damages for the loss of a planing mill, fixtures and stock of lumber destroyed by fire about 2:30 o'clock in the morning of December 19, 1913, alleged to have resulted from the negligence of. appellee in "carelessly and negligently allowing and permitting sparks of fire and cinders to escape from their passing engine and engines, which sparks of fire

and cinders set fire to, burned and destroyed" the mill and its contents.

Appellee answered traversing the allegations of negligence and denied that the destroyed property was worth more than $2,750.00. On a trial a verdict signed by nine of the jurors was returned in favor of appellee, and a judgment entered dismissing appellant's petition, from which judgment this appeal is prosecuted.

The errors upon which a reversal is sought are (1) that the court erred in giving instruction No. 4 over appellant's objection and in refusing to give instruction "A" offered by appellants; (2) that the verdict is flagrantly against the evidence, and (3) that the court erred in overruling appellant's motion for a new trial upon the ground that one of the jurors signing the verdict was asleep during a part of the time of the trial.

1. Appellant's evidence disclosed the fact that a heavy freight train, No. 84, drawn by two engines, No. 1315 and No. 1316, was stalled near the destroyed property about nine o'clock on the evening of December 18th, and that before the train finally got away from Stanford about 10:15 the engines drawing this train in passing the mill were emitting live cinders from which a fire was started on the right of way near the mill. All of the evidence introduced by appellants was directed toward proving that the two engines of this particular train emitted the sparks from which the fire resulted, and at the close of the evidence appellants offered instruction No. 1 which was given by the court, which limited their right of recovery to a fire originating from the sparks thrown out by engines No. 1315 and No. 1316. In the proof for appellee it developed that between the time that this train, No. 84, passed the mill at 10:15, and 2:30 o'clock the next morning when the fire was discovered, there were two other heavy freight trains drawn by two engines each and one passenger train with a single engine that passed by the mill, but without proof that any of these engines emitted sparks from which the fire could have been started.

Instruction No. 4 of which appellants complain told the jury that although they might believe that the fire was caused by sparks from engines No. 1315 and No. 1316, yet if they further believed from the evidence that the engines were equipped with the best and most approved screens and sparks arresters in practical use

and in good order, they should find for the defendant unless they believed that the engines were negligently operated. The objection urged to this instruction is that it authorizes a finding for appellee if engines No. 1315 and No. 1316 were properly equipped and did not place upon appellee any duty with reference to the other five engines shown by the evidence to have passed the mill. We do not think appellants are in a position to make such an objection as this, since this instruction is but a corollary of instruction No. 1 offered by appellants and given, in which their right of recovery is limited to sparks from these two engines. If by the instruction offered by appellants presenting their theory of the case they could recover only for sparks from these two engines, then under the conditions described in instruction No. 4 they were not entitled to recover even though the fire originated from one of these engines unless negligently or carelessly operated. Appellants cannot object to instruction No. 1 because it was offered by them. Neither can they object to instruction No. 4, which correctly states an additional phase of the same proposition of law presented by instruction No. 1. Neither were they entitled to have instruction "A" offered by them given to the jury, because the same idea insofar as they were entitled to have it presented in the instructions is incorporated in instruction No. 1. Negligence in keeping the track free from grass and weeds which were liable to communicate a fire from a passing train to adjacent property is not relied upon in the petition, and an instruction which would have presented negligence in respect thereto as an independent cause of recovery, as did the refused instruction, was therefore not authorized by the pleadings. As instruction No. 1 authorized the jury to find for appellants if the fire originated from the negligence of appellee in permitting its engines to emit hot cinders from which the fire was communicated to appellants' mill, which is the only negligence alleged, either directly or indirectly, from grass, weeds or other combustible materials upon the right of way which were permitted to be there negligently or otherwise, it presented to the jury every theory advanced for appellants by the pleadings and the evidence as to the origin of the fire and appellee's liability therefor.

2. Appellants contend that the verdict is flagrantly against the evidence, but to this we cannot agree. The most that can be said for the evidence, in our judgment, is that it might or might not account for the origin of the fire, although we are rather inclined to believe that the preponderance of the evidence is to the effect that the fire did not originate from sparks of either of the two engines upon which appellants base their case. It was more than four hours after these engines had passed before the fire was discovered in the mill. A number of witnesses were introduced by appellee who testified that there was no fire on the right of way of the railroad company from the time the two engines complained of passed the mill until some time after twelve o'clock. The jury was authorized to believe these witnesses upon this question, and if their testimony was true appellants' theory that the fire was communicated to the mill from a fire started in the grass upon the right of way by the engines that passed about ten o'clock is untenable. There was no direct proof of just how the fire originated. The proof of the origin of the fire is all circumstantial and none of it convincing, and under such circumstances we certainly could not say that the verdict of the jury is so flagrantly against the evidence as to indicate prejudice or passion upon the part of the jury in behalf of the railroad company and against the unfortunate owners of the mill property.

3. Upon the last ground urged upon us, that one of the jurors was asleep during a part of the time of the trial, all that need be said is that the affidavits of the two jurors who stated they saw him with his eyes closed and nodding at times during the trial are flatly contradicted by the affidavit of the juror himself, and besides no objection having been made during the progress of the trial to this fact, it is evident that even if the juror did nod at some time during the trial it was not for a sufficient length of time to have attracted the attention of any one of the three able counsel representing appellants, or if they did notice it they did not at that time regard it of sufficient importance to enter an objection or make any motion on account thereof. Neither do the affidavits indicate at what time during the progress of the trial the nodding is alleged to have occurred. From all that appears it may have been while appellee was presenting its defense. Upon this ground appellants

fall far short of making it appear that the trial court abused a sound discretion in refusing to grant a new trial.

For the reasons indicated the judgment is affirmed.